UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

CORDELL D. OSBORNE,

Defendant.

Case No. 15-CR-62

---

**ORDER DECLINING TO ACCEPT MAGISTRATE JUDGE'S RECOMMENDATION (DKT. NO. 24) AND DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 15)**

---

On March 9, 2015, while investigating a report that a driver had fled the scene of a hit-and-run car accident, two officers from the Milwaukee Police Department pursued the defendant, Cordell D. Osborne, into an Advance Auto Parts store. After the officers stopped Osborne to speak with him, one of the officers conducted a pat-down of the defendant's person, and found to a concealed firearm. On April 7, 2015, the grand jury indicted the defendant on one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). Dkt. No. 1. The defendant moved to suppress evidence of the firearm, alleging that the police found it through an unreasonable search. Dkt. No. 15. The magistrate judge held an evidentiary hearing on June 11, 2015, Dkt. No. 19, and on July 14, 2015, issued a recommendation that this court find (a) that the officers' pat-down of the

defendant was unreasonable, and (b) that the inevitable discovery doctrine did not save the constitutionality of the search, and that the court grant the defendant's motion. Dkt. No. 24.

The case now is before the court on review of the government's objections to the magistrate judge's report and recommendation. Upon consideration of the parties' briefs, and after a hearing at which the court heard testimony from the officers who arrested the defendant, the court declines to adopt the magistrate judge's recommendation, and denies the defendant's motion to suppress.

I.  **STANDARD OF REVIEW**

Under 28 U.S.C. §636(b)(1)(A)-(B), a magistrate judge cannot issue a final order on a motion to suppress evidence in a criminal case. Instead, the magistrate judge submits proposed findings of fact and recommendations to the district court. If a party files a timely objection to the magistrate judge's report and recommendation, §636(b)(1) provides that

> the district judge is to make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The court may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge also may receive further evidence or recommit the matter to the magistrate judge with instructions.

In this case, the magistrate judge made a credibility determination adverse to the officer who conducted the pat-down (Officer Valeria Zorich); that determination was central to his recommendation that this court grant the motion to suppress. The government contests the magistrate judge's credibility

2

determination. In 1980, the United States Supreme Court explained that the district court's "broad discretion includes hearing the witnesses live to resolve conflicting credibility claims," and "assume[d] it is unlikely that a district judge would *reject* a magistrate judge's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal . . . ." U.S. v. Raddatz, 447 U.S. 667, 681 n.7, 100 S. Ct. 2406, 2415, n.7 (1980). Because Officer Zorich's credibility is dispositive of whether her search was supported by reasonable suspicion, the court held an evidentiary hearing, and heard testimony from the officers involved in the investigation which ultimately revealed a firearm concealed under Osborne's clothing.

## II. FACTS

At around 5:00 p.m. on March 9, 2015, Milwaukee Police Officers Valeria Zorich (an eight-year police veteran) and Chad Wilson (a thirteen-year police veteran) were on patrol in their squad car. Officer Zorich testified that she and Officer Wilson received information over their police dispatch radio that a hit-and-run accident had occurred near their location. A citizen witness reported that the driver of one of the vehicles had fled the scene on foot and entered an Advance Auto Parts store. The citizen witness provided a description of the individual, and the officers decided to investigate. Officers Zorich and Wilson testified that, in their experience, people who flee the scene of a traffic accident want to avoid police contact, often because they have outstanding warrants or are on probation or parole, were operating a stolen vehicle, or have drugs or guns on their person.

3

The officers arrived at Advance Auto Parts less than one minute after learning of the accident. They parked in the parking lot of the store and approached the entrance, in uniform. Before they entered the store, the citizen witness identified himself, and pointed out an individual who had just walked in the store, identifying him (the defendant) as the person who had fled the accident scene. Officer Zorich testified that the officers could see the defendant inside the store while they were still outside, because the storefront is comprised of glass windows and doors.

The officers entered the store, which was open for business. Officer Zorich testified that the store was well lit, and that there were employees and customers inside. She continued to observe the defendant as she moved into the store. She testified that his back was toward the officers, his phone was in his left hand, and he was pacing the aisles at the back of the store. Officer Zorich testified that the defendant looked at the officers, then kept walking to the back of the store, away from them. Officer Zorich and her partner separated and pursued the defendant from different directions, attempting to prevent his escape. She testified that she knew the defendant already had fled an accident scene, and she did not want him to be able to flee from the officers, too.

Officer Zorich testified that the defendant appeared to be nervous and to be trying to ignore the officers, though he realized they were there. She testified that he kept looking around the store, as if he was looking to evade the officers. From about ten feet away, Officer Zorich observed the defendant was wearing a

4

black winter hat, a black short-sleeved t-shirt, charcoal pants, and black tennis shoes. She found it odd that the defendant was wearing only a t-shirt in March.

Officer Zorich stopped walking toward the defendant when she was about two to three feet away from him. She asked him if he had been involved in a car accident. The defendant replied, "I wasn't even driving." To Officer Zorich, that indicated that the defendant was, in fact, involved in a car accident. Officer Zorich testified that, at that time, she believed that the defendant had violated the law, because she had been advised by citizen witness that the defendant was a driver who had fled the scene of a hit-and-run.

While Officer Zorich was speaking to the defendant, he was standing "bladed away" from her, not facing her directly. She could see his right side better than his left side; Officer Wilson was on the defendant's left side. Officer Zorich testified that even earlier, she'd noticed that the defendant's shirt fell strangely; at this close range, the way the defendant's clothing was falling appeared to be unnatural and suggested that an object was present in his right front waist area. Based on her training and experience, she believed the object might be a firearm, because that is a location where individuals keep firearms. Officer Zorich then told the defendant that she was going to pat him down. She testified that she did this for her safety and for the safety of others in the store. In addition to the appearance of something hidden under the defendant's clothing, Officer Zorich testified that the factors that informed her decision to conduct the pat-down at that time were: (1) the defendant had fled an accident

5

scene; (2) people who flee accident scenes often want to avoid police contact due to outstanding warrants or the possession of firearms or drugs; (3) the defendant had made a statement which she believed confirmed that he was involved in the accident; (4) the defendant's general demeanor, mannerisms, and attempts to ignore the officers were suspicious; and (5) the store was a public place that was open for business. Based on all of those factors, she testified that she believed that the defendant posed a danger to her or others in the store at the time of the pat-down.

Officer Zorich told the defendant that she was going to conduct a pat-down, and asked him to raise his arms. Officer Zorich testified that she started the pat-down at the right front area of the defendant's waist, the location where she had observed the impression under his clothing. She testified that she touched a hard object and, based on her training and experience, believed it was a firearm. She lifted the defendant's shirt, and saw that he had a firearm in the waistband of his pants, barrel facing down, the handle sticking up and to the right. It was positioned for a right-handed person to easily grab. Officer Zorich took the firearm, at which point the defendant stated that it wasn't even his.

Later that night, Officer Zorich prepared an incident report regarding the defendant's arrest. The report did not include her observation of a bulge under the defendant's clothing in her report. At the evidentiary hearing, she testified that she left that information out of her report by mistake; she attributed the mistake to her workload and job responsibilities around the time of the

6

defendant's arrest. She testified that usually, she worked 4:00 p.m. to midnight, and that she'd worked a full shift the day before the defendant's arrest. On the day of his arrest, however, she had to appear for a jury trial that lasted from 8:00 a.m. to 4:00 p.m., after which she went on the shift during which the defendant was arrested. The jury trial was to continue into the day after the defendant's arrest. Despite leaving her observation of the bulge out of the report, however, Officer Zorich testified that she was certain that she saw the outline of an object under the defendant's clothing before conducting the pat-down. She completed the report of the defendant's arrest at about 2:30 a.m. She testified that she could not have waited to complete the report the following day—the defendant was in custody and there would be a preliminary hearing.

Officer Wilson also testified that he believed the defendant had violated the law (as a driver who had left the scene of a hit-and-run accident). He testified that, in his experience, people flee the scene of a traffic accident because they have drugs or weapons on their person, are the subject of an outstanding arrest warrant, or are on probation and want avoid police contact. To Officer Wilson, the defendant appeared nervous and evasive, and he was looking around the officers, past them, as if he might be looking to run. Like Officer Zorich, Officer Wilson stopped approaching the defendant when he was within three to four feet. Officer Wilson did not testify that he saw a bulge under the defendant's clothing. He testified that he was standing on the

7

defendant's left side, with a straight side view, when his partner conducted the pat-down.

III. **ANALYSIS**

The magistrate judge recommended that this court find that the officers had reasonable suspicion to conduct a stop under Terry v. Ohio, 392 U.S. 1 (1968), but that they lacked reasonable suspicion to believe that the defendant was armed and dangerous at the time of the stop (the suspicion which would justify the further intrusion of a pat-down). The magistrate judge also recommended that the court find that the government had failed to establish by a preponderance of the evidence that the officers' discovery of the defendant's concealed firearm was inevitable. See United States v. Howard, 729 F.3d 655, 663 (7th Cir. 2013) ("The inevitable discovery doctrine permits the government to introduce evidence seized in violation of the Fourth Amendment 'if the Government can prove, by a preponderance of the evidence, that the officers 'ultimately or inevitably would have . . . discovered [the challenged evidence] by lawful means.'") The defendant did not contest the magistrate judge's proposed finding that the facts known to the officers at the time they stopped him "easily satisfies the quantum of reasonable suspicion necessary for the comparatively minor seizure of a Terry stop." Dkt. No. 24, at 5.

The government offers two arguments in support of its objections to the magistrate judge's recommendation that this court grant the defendant's motion to suppress: (1) Officer Zorich's pat-down was justified by objectively reasonable suspicion, and (2) the inevitable discovery exception to the

8

exclusionary rule applies and allows the court to admit evidence of the firearm, because the officers would have learned the defendant's identity through investigating the hit-and-run and eventually would have arrested him on an outstanding warrant. This court concludes that Officer Zorich testified credibly that she had reasonable suspicion to conduct the pat-down. Based on the totality of the circumstances known to Officer Zorich at that time, the court finds that her decision to pat the defendant down was supported by objectively reasonable suspicion. Because the court will deny the motion on that basis, it is not necessary for the court to consider the government's alternative inevitable discovery doctrine.

A. A <u>Terry</u> Frisk Must Be Supported By A Reasonable And Articulable Suspicion That The Suspect Is Armed And Dangerous.

<u>Terry v. Ohio</u>, 392 U.S. 1, 88 S. Ct. 1868 (1968) is the Supreme Court's seminal case on the constitutionality of a police officer's patdown of a suspect during an investigatory stop. "<u>Terry</u> established the legitimacy of an investigatory stop 'in situations where the police may lack probable cause for an arrest.'" <u>Arizona v. Johnson</u>, 555 U.S. 323, 330, 129 S. Ct. 781, 786 (2009) (quoting <u>Terry</u>, 392 U.S. at 24, 88 S. Ct. 1868). "When the stop is justified by suspicion (reasonably grounded, but short of probable cause) that criminal activity is afoot, the Court explained, the police officer must be positioned to act instantly on reasonable suspicion that the persons temporarily detained are armed and dangerous" and conduct "a limited search of outer clothing for weapons . . . to protect both the officer and the public . . . ." <u>Id.</u> (citing <u>Terry</u>, at 23–24, 27, 30–31, 88 S. Ct. 1868).

9

Because a pat-down is more intrusive than a brief investigatory stop, an officer's decision to conduct a pat-down must be justified by "articulable facts that would establish the separate and specific condition that the detainee has a weapon or poses some danger." United States v. Williams, 731 F.3d 678, 686 (7th Cir. 2013) (citing Terry, 392 U.S. at 27, 88 S. Ct. 1868). "In other words, an officer performing a Terry stop may not automatically frisk the individual subject to the stop; rather, to do so, the officer must have some articulable suspicion that the subject is armed and dangerous." Id. (quotation marks and citation omitted).

"[T]he reasonable suspicion standard is an objective one," which asks "whether a reasonable police officer, faced with the circumstances confronting [the officer], would believe that [the suspect] posed a danger to those in the immediate vicinity." United States v. Patton, 705 F.3d 734, 738 (7th Cir. 2013) (citing Terry, 392 U.S. at 27, 88 S. Ct. 1868) (alterations omitted). Thus, whether an officer has reasonable suspicion "turns on the totality of the circumstances confronting the officer." Id. In United States v. Cortez, 449 U.S. 411, 101 S. Ct. 690 (1981), the Supreme Court further explained:

> [T]he assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, . . . and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human

10

> behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

Id. at 418, 101 S. Ct. at 696. Circumstances for courts to consider as part of the reasonable suspicion analysis can include the officer's training and experience, United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, (2002); the location of the stop, United States v. Tinnie, 629 F.3d 749, 752 (7th Cir. 2011); and the suspect's demeanor and behavior, United States v. Ocampo, 890 F.2d 1363, 1368 (7th Cir. 1989). "[N]ervous, evasive behavior is another pertinent factor in determining reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000).

B. Officer Zorich's Decision To Pat The Defendant Down Was Supported By Reasonable Suspicion

The defendant contends it is not believable that Officer Zorich, a veteran police officer trained in writing reports, would fail to include in her post-arrest report her observation of a bulge under the defendant's shirt. The defendant argues that a police report is a key document in a police file. He argues it is more likely that Officer Zorich did not see any such bulge. The defendant highlights the facts that Zorich did not refer to the bulge in her contemporaneous notes, that she failed to catch her error in the final report despite opportunities to do so, and that Officer Wilson did not testify to seeing a bulge under the defendant's clothes.

11

The magistrate judge determined Officer Zorich's testimony that she observed a bulge under the defendant's clothing was not credible, primarily because he was not convinced by her explanation that she made a mistake and forgot to include it, possibly due to the long hours she'd been working at the time she prepared her report. He also found that her testimony was not corroborated by any other evidence. For those reasons, the magistrate judge excluded Officer Zorich's observation from his analysis of the circumstances known to the officers at the time of the pat-down, and determined that the remaining circumstances did not amount to objectively reasonable suspicion that the defendant might have a firearm.

Tis court observed Officer Zorich testify in person, and finds that Officer Zorich testified credibly that she observed a bulge under the defendant's clothing before patting him down. The court found Officer Zorich's demeanor on the stand and her response to cross-examination to be credible. While it would have been better had Officer Zorich included that observation in her report, the court found credible her explanation that she simply forgot. By the time she completed the report, she had been on duty some 18.5 hours, and had worked a full 4:00-midnight shift the prior day. This court does not find it so very unlikely that by that time, Officer Zorich was focused more on explaining why she and Officer Wilson had arrested the defendant, not on why she had searched him.

Accordingly, this court will incorporate Zorich's observation of a bulge under the defendant's clothes into its analysis of whether there was reasonable

12

suspicion for the pat-down. Considering the totality of the circumstances, including Officer Zorich's testimony that she saw an impression beneath the defendant's clothing, the court finds that Officer Zorich's pat-down of the defendant was supported by objectively reasonable suspicion.

Before the officers arrived at Advance Auto Parts, they had heard on their police radio that a driver—not simply a passenger—of a vehicle involved in a hit-and-run had fled the scene. When they arrived that the store, they were told by a witness that the driver had entered the store. So, even before encountering the defendant, the officers had information from which they suspected that the individual they were pursuing had committed a crime by fleeing the scene of a hit-and-run. As explained earlier, both officers testified that, in their training and experience, people flee accident scenes to avoid police contact because, among other things, they are subject to an outstanding warrant or have drugs or weapons on their person.

After the officers entered the store, they identified the defendant as the suspected driver, and observed him talking on his phone and pacing at the back of the store. As Officer Zorich approached the defendant, she thought he appeared nervous and was attempting to ignore her. As she observed him, she perceived that he was aware of her presence, and was attempting to look for a way out of the store in order to evade the officers. When Officer Zorich came within three feet of the defendant, she testified that she saw the outline of an object under his clothes. She testified that the object was located in his waistband, a place where people conceal weapons. She then told the defendant

13

that she was going to conduct a pat-down, and she testified she did that for her safety and for the safety of others in the store.

At the moment Officer Zorich decided to pat the defendant down, she suspected that he was the driver of a car involved in a hit-and-run accident who had fled into a store that was open for business with customers present. She had observed his demeanor and behavior, and it indicated to her that he was nervous and wanted to avoid police interaction, if not escape the police entirely. From Officer Zorich's training and experience, that behavior led her to suspect that the defendant might be the subject of an outstanding warrant or could be in possession of a weapon. And, by the time she conducted the pat-down, Officer Zorich had seen the impression of an object concealed under his shirt that she believed might be a weapon.

The court concludes that these circumstances, viewed in their entirety, establish that Officer Zorich had an objectively reasonable suspicion that the defendant had a firearm when she conducted the pat-down. The scope of Officer Zorich's search was confined to the area where she had seen a bulge under the defendant's shirt, and was limited to detecting "guns, knives, clubs or other hidden instruments for the assault of a police officer." Terry, 392 U.S. at 29, 88 S. Ct. at 1884. The pat-down satisfies Terry, and the court will deny the defendant's motion to suppress.

## IV. CONCLUSION

For the reasons discussed above, the court **DENIES** the defendant's motion to suppress. The court will set a date at which the parties may discuss further scheduling.

Dated in Milwaukee, Wisconsin this 25th day of January, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

15

Case 2:15-cr-00062-PP   Filed 01/25/16   Page 15 of 15   Document 33